UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT B.,[1]

    Plaintiff,

v.

COMMISSIONER, Social Security Administration,

    Defendant.

Case No. 3:22-cv-01446-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

    Plaintiff Robert B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 13. For the reasons below, the Commissioner's final decision is AFFIRMED.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in August 2020, alleging an amended disability onset date of January 15, 2020. Tr. 201.[2] His application was denied initially and upon reconsideration. Tr. 202–08, 210–215. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in August 2021. Tr. 166–68. On August 31, 2021, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 149–162. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–7. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 44 years old on his alleged onset date. Tr. 202. Plaintiff has at least a high school education and has past relevant work experience as a managing director. Tr. 160. Plaintiff alleged disability based on several physical and mental impairments, including complications of a transplanted heart, cognitive dysfunction, acquired, obstructive sleep apnea, and hypertensions associated with heart transplantation. Tr. 202.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's]

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since his alleged onset date. Tr. 151. At step two, the ALJ found that Plaintiff had the following severe impairments: "history of cardiomyopathy requiring repeat open heart surgery with heart transplant and sleep apnea." Tr. 152. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. *Id.* The ALJ found that Plaintiff had an RFC to perform light work with the following limitations:

> [Plaintiff] would need to avoid concentrated exposure to dust,
> fumes, gases, poor ventilation, and other noxious odors. Also, due

Page 4 — OPINION AND ORDER

>to mental fatigue and reduced tolerance to stress, [Plaintiff] is further limited to simple, repetitive, routine tasks.

*Id*. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 160. At step five, the ALJ found, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy such that Plaintiff could sustain employment despite his impairments. Tr. 161. The ALJ thus found Plaintiff was not disabled under the Act. Tr. 162

## DISCUSSION

Plaintiff asserts remand is warranted for four reasons: (1) the ALJ mischaracterized the nature of Plaintiff's cardiac impairment at step two; (2) the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; (3) the ALJ failed to give legally sufficient reasons for rejecting the medical opinion evidence; and (4) the RFC was made in error.

I. Step Two

Plaintiff argues that the ALJ erred by improperly characterizing the nature of his cardiac impairment at step two. Pl.'s Op. Br. 11–12, ECF No. 12. Specifically, Plaintiff asserts that Dr. Daniel Fishbein, M.D. diagnosed Plaintiff with "Complications of Transplanted Heart," and identified the following active complications: persistent fatigue, diminished energy and stamina, and chronic lower extremity swelling. Pl.'s Op. Br. 11. Plaintiff explains that the ALJ minimized the nature of his cardiac impairment by calling it something "less severe." Pl.'s Op. Br. 12.

At step two, the Commissioner must determine whether the claimant has a "medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). A severe impairment "significantly limits" a claimant's "physical or mental

ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). The step two threshold, however, is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.... [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, *available at* 1985 WL 56856 at *2 (Nov. 30, 1984) (internal quotations omitted). Put differently, the step two inquiry "is 'a *de minimis* screening device to dispose of groundless claims.' " *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The Ninth Circuit has held, however, that an error in failing to designate a specific impairment as severe can be harmless where it does not prejudice a claimant because the ALJ nonetheless considers the impact of the impairment in formulating the claimant's RFC. *Burch,* 400 F.3d at 682 (holding that any error in omitting an impairment at step two was harmless when step two was resolved in claimant's favor); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding harmless error where the ALJ neglected to find "antisocial personality disorder" severe but nonetheless considered the claimant's "personality disorder" in crafting the RFC).

Here, any error was harmless because the ALJ considered all of Plaintiff's cardiac symptoms and complications, as well as his hypertension when assessing the RFC. Tr. 152–160. Furthermore, at step two, the ALJ found that Plaintiff's "history of cardiomyopathy requiring repeat open heart surgery with heart transplant" was a severe impairment, so Plaintiff's argument is predominantly based on the ALJ's phrasing. Where an ALJ errs by failing to list a severe impairment at step two, the error is harmless if the ALJ considers all of a claimant's functional limitations at step five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Thus, because the

Page 6 — OPINION AND ORDER

ALJ considered Plaintiff's cardiac impairments and hypertension and continued the sequential evaluation, any error by the ALJ was harmless.

## II. Subjective Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, " '[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 1 1-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

Plaintiff argues that the ALJ improperly rejected his subjective symptom testimony. Plaintiff's function report states that his conditions affect his ability to walk and climb stairs. Tr.

327. Plaintiff stated his physical activity is limited and he is often breathless immediately. *Id.* He testified that swelling in lower extremities became debilitating and he sought medical attention in the fall of 2019. Tr. 172. Regarding his mental limitations, he reported that he has difficulty remembering, concentrating, and learning and retaining new information. Tr. 412

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence for the reasons explain in [his] decision." Tr. 154. The Commissioner asserts that the ALJ properly rejected Plaintiff's subjective symptom testimony for two reasons: (1) his testimony was inconsistent with his activities of daily living; and (2) Plaintiff's testimony was inconsistent with the medical record. Def.'s Br. 5–6, ECF No. 20.

First, the ALJ appropriately considered Plaintiff's daily activities in rejecting his subjective symptom testimony. When assessing credibility, the ALJ "may consider, among other factors, ... the claimant's daily activities." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (internal quotation and citation omitted). Plaintiff testified that the swelling in his lower extremities became debilitating and that he has trouble walking and climbing upstairs. Tr. 172. He reported that physical activity is limited as a result. Tr. 327. Despite these allegations, in November 2021, Plaintiff reported that he still rides his Peloton stationary bike for thirty to sixty minutes a day. Tr. 31 Plaintiff also reported that "he feels his ability to ride remains stable." *Id.* Plaintiff also prepares his own meals, does laundry and household chores, is able to drive and go out alone, and can perform personal care without difficulty. Tr. 323–26. The ALJ adequately explained that Plaintiff's activities of daily living are not consistent with a

finding of complete disability, and the level of activity described by Plaintiff is consistent with the RFC. Tr. 157

Second, the ALJ noted that Plaintiff's testimony regarding the severity of his symptoms and limitations was contradicted by the medical evidence in the record. An ALJ may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, while Plaintiff reported that he has cognitive difficulties and fatigue, cognitive testing reflected average cognitive skills in most areas including memory recall and verbal intellectual reasoning. Tr. 154–56 (citing 412–13). Regarding Plaintiff's cardiac complications and symptoms, the ALJ cited normal physical examination findings including normal cardiovascular rate and rhythm, normal heart sounds, and no murmur, rub, or gallop with normal pulmonary effort. Tr. 156–57 (citing 497-98). An echocardiogram from June 2020 indicated normal left ventricular chamber size with normal wall thickness. Tr. 29. Systolic function was normal, with an ejection fraction of 66 percent and no regional wall motion abnormalities. Tr. 496. Pulmonary pressure estimates were within normal range with normal central venous pressure. Tr. 29. In November 2020, a diagnostic level dobutamine stress echocardiogram with no ECG was done. Tr. 496. Baseline images revealed normal left ventricular size and systolic function. *Id.* Plaintiff testified that in the summer of 2019 the swelling in his lower extremities became debilitating, however all of Plaintiff's medical records after November 2020 indicate that Plaintiff denied leg swelling. Tr. 31, 80 172, 497, 504. Plaintiff also explained to Dr. Fishbein that he does not have significant dyspnea when walking on flat surfaces but has significant fatigue walking on inclines. Tr. 31.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom testimony. Although Plaintiff may

disagree with the ALJ's interpretation of the record, the ALJ's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

### III. Medical Opinion Evidence

Plaintiff next argues the ALJ improperly rejected the opinion of Dr. Fishbein. Pl.'s Br. 5–7. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017). The Ninth Circuit recently weighed in on the impact of the new regulations on existing Circuit caselaw. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).

An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods*, 32 F.4th at 787. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Under the revised regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

The sole medical opinion at issue is that of Dr. Fishbein, who Plaintiff argues the ALJ improperly rejected. Pl.'s Br. 16. Dr. Fishbein began treating Plaintiff in October 2017 after Plaintiff relocated to Portland. Tr. 381. On February 11, 2020, Dr. Fishbein completed a treating source statement. Tr. 381-82. He also later gave a medical opinion on August 8, 2021. Tr. 596-604. In the opinion, Dr. Fishbein opined that Plaintiff would need to sit down in excess of typical breaks during an eight-hour workday, that Plaintiff would be able to stand/walk for less than two hours in an eight-hour workday. Tr. 600. In discussing Plaintiff's ability to stay on task, Dr. Fishbein indicated that Plaintiff cannot stay on task for more than for more than twenty percent of the workday or workweek. Tr. 601. However, Dr. Fishbein explained that this limitation was difficult to assess and mentioned that Plaintiff had difficulty staying on task at his last job at Accenture, and that he suspects this is due to his "multiple runs on cardiopulmonary bypass but I

think that this is unclear." *Id.* The doctor also concluded that Plaintiff would be unable to lift over "10 [pounds] through 8/19/18," after which Plaintiff's ability to lift would "gradually increase." Tr. 806. Dr. Fishbein also stated that by midday, Plaintiff needs to rest and elevate his feet. Tr. 373, 599.

The ALJ rejected Dr. Fishbein's opinion on the basis that Dr. Fishbein "overstates [Plaintiff's] limitations in a manner not consistent with the medical evidence of record or with [Plaintiff's] activities of daily living. Tr. 158–159. The ALJ also determined that there is no support for the degree of standing, walking, and sitting restrictions opined by Dr. Fishbein. Tr. 159. In support of these conclusions, the ALJ cites Dr. Fishbein's treatment notes indicating that Plaintiff reported he does not have significant dypsnea with walking on flat surfaces, and denied leg swelling, chest pain, and palpitations. Tr. 497, 518. On November 8, 2021, Dr. Fishbein noted that Plaintiff had been doing well. Tr. 31. The ALJ also explained that a diagnostic coronary angiogram identified no epicardial coronary disease. Tr. 548. Additionally, the ALJ reasoned that "the previously observed 30-40 percent stenosis in the mid LAD unresponsive to TNG appear[ed] stable and most consistent with myocardial bridge without significant compression." Tr. 548. The ALJ also concluded that "Dr. Fishbein overstates [Plaintiff's] leg swelling and pain." Tr. 159. The ALJ explained that Plaintiff did not mention any problems with pain at the hearing and that the treatment record does not mention chronic pain as well. *Id.* There is nothing in the treatment record that references a need to keep his legs elevated, or chronic pain. As such, the ALJ's rejection of the opinion is supported by substantial evidence.

## IV.  Step Five

The RFC is the most a person can do despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical

and other evidence," including the claimant's testimony as well as that of lay witnesses. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Put differently, the "RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (emphasis in original) (bracketing and quotation marks omitted) (citing SSR 96-8p, available at 1996 WL 374184).

Plaintiff first argues that the RFC is inaccurate because if Dr. Fishbein's opinion was found to be persuasive, Plaintiff would be limited to work at a less than sedentary exertional level. Pl.'s Br. 18–19. As discussed above, the ALJ provided legally sufficient reasons for rejecting Dr. Fishbein's opinion, and therefore was not required to include the limitations opined by Dr. Fishbein in Plaintiff's RFC.

Plaintiff then argued that the ALJ ignored his post-hearing request to ask the VE about whether the job positions identified could be performed while social distancing due to the Coronavirus Disease 2019 (COVID-19) Pandemic and his status as a prior heart transplant patient. Pl.'s Br. 19. Plaintiff does not cite any legal authority allowing a claimant to make a post-hearing request requiring an ALJ to consider issuing a post-hearing subpoena. Plaintiff's letter requesting for information from a vocational expert is untimely, given that such a request for witness testimony must be made prior to the hearing. 20 C.F.R. § 404.950(d)(1)-(2).

//
//
//
//
//

## CONCLUSION

For the reasons above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this <u>26th</u> day of October 2023.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
